UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x
                                :
UNITED STATES OF AMERICA        :        **ORDER**
                                :
        - v. -                  :        S1 11 Cr. 614 (VM)
                                :
JEFFREY RINCHEY,                :
                                :
                Defendant.      :
                                :
- - - - - - - - - - - - - - - x

U S DC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/22/12

        WHEREAS, the defendant's guilty plea allocution was
made before United States Magistrate Judge Andrew J. Peck, with
the defendant's consent, on August 27, 2012;

        WHEREAS, a transcript of the August 27, 2012,
allocution was thereafter transmitted to this Court; and

        WHEREAS, upon review of that transcript, this Court has
determined that the defendant entered the guilty plea knowingly
and voluntarily and that there was a factual basis for the guilty
plea;

        IT IS HEREBY ORDERED that the defendant's guilty plea
is accepted.


SO ORDERED:

Dated:      New York, New York
            October 22, 2012


                        THE HONORABLE VICTOR MARRERO
                        UNITED STATES DISTRICT JUDGE

c8rkrinp.txt

1

C8rkrinp                    PLEA

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        11 CR 614 (VM)

5   JEFFREY RINCHEY,

6                   Defendant.

7   ------------------------------x

8                                        New York, N.Y.
                                         August 27, 2012
9                                        10:40 a.m.

10
    Before:
11
                       HON. ANDREW J. PECK,
12
                                         Magistrate Judge
13

14                      APPEARANCES

15
    PREET BHARARA,
16       United States Attorney for the
         Southern District of New York
17  JONATHAN COHEN
         Assistant United States Attorney
18
    PETER E. TOMMASO
19       Attorney for Defendant

20

21

22

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              2

    C8rkrinp                    PLEA

```
                              c8rkrinp.txt
 1            (In open court)
 2            THE DEPUTY CLERK:  U.S. v. Jeffrey Rinchey.  Counsel,
 3   please state your name for the record.
 4            MR. COHEN:  Jon Cohen on behalf of the government.
 5   Good morning, your Honor.
 6            MR. TOMMASO:  For the defendant, Peter Tommaso.  Good
 7   morning, your Honor.
 8            THE COURT:  Good morning.  All right, Mr. Rinchey,
 9   please stand.
10            Is this your signature on the consent to proceed form?
11            THE DEFENDANT:  Yes, it is, your Honor.
12            THE COURT:  And did your attorney explain to you that
13   you have the right to have your plea heard by Judge Marrero,
14   the district judge, but that if you consent, as it appears that
15   you have, I can hear your plea and I will make a recommendation
16   to Judge Marrero?
17            THE DEFENDANT:  Yes, your Honor.
18            THE COURT:  And you have agreed to that, right?
19            THE DEFENDANT:  Yes.
20            (Defendant sworn)
21            THE COURT:  Put your hand down but remain standing.
22            State your full name for the court reporter's
23   transcript.
24            THE DEFENDANT:  Jeffrey Rinchey.
25            THE COURT:  And are you a U.S. citizen, sir?
```

C8rkrinp                    PLEA

3

```
 1            THE DEFENDANT:  Yes, I am.
 2            THE COURT:  What is the last grade of schooling that
 3   you completed?
```
Page 2

c8rkrinp.txt

 4              THE DEFENDANT:  I obtained my GED.
 5              THE COURT:  And are you currently or were you recently
 6    under the care of a doctor, a psychiatrist, or any other
 7    medical or mental health professional?
 8              THE DEFENDANT:  No, your Honor.
 9              THE COURT:  Have you taken any drugs or medicine
10    yesterday or today, even anything as simple as an aspirin?
11              THE DEFENDANT:  No, your Honor.
12              THE COURT:  Have you ever been treated for alcoholism
13    or drug addiction?
14              THE DEFENDANT:  Yes, your Honor.
15              THE COURT:  And when was that?
16              THE DEFENDANT:  Ten, twelve years ago.
17              THE COURT:  Was it for alcoholism or drug addiction?
18              THE DEFENDANT:  Alcohol.
19              THE COURT:  Is there anything in the treatment you
20    then received, or the lack of treatment more recently, that in
21    any way, in your view, affects your ability to think clearly
22    here today?
23              THE DEFENDANT:  No, your Honor.
24              THE COURT:  And, in fact, do you feel physically and
25    mentally all right and able to proceed with your case today?

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                          4

      C8rkrinp              PLEA

 1              THE DEFENDANT:  Yes, your Honor.
 2              THE COURT:  Are you having any difficulty seeing or
 3    hearing or understanding what I'm saying?
 4              THE DEFENDANT:  No, your Honor.
 5              THE COURT:  Promise me now, Mr. Rinchey, that if any
                          Page 3

c8rkrinp.txt
```
 6    at point you don't understand what I'm asking you or what I'm
 7    telling you, you won't try to guess at an answer or fake it but
 8    you'll ask me to be louder or clearer or both, whatever you
 9    need to understand me, OK?
10              THE DEFENDANT:  OK.
11              THE COURT:  Good.  Have you received a copy of the S1
12    indictment against you and others?
13              THE DEFENDANT:  Yes.
14              THE COURT:  And have you discussed it with your
15    attorney?
16              THE DEFENDANT:  Yes, I have.
17              THE COURT:  And do you understand that you are charged
18    in Count Six with conspiring -- that is, agreeing with
19    others -- to commit wire fraud, and that that carries a maximum
20    sentence of five years' imprisonment, a maximum of three years'
21    supervised release, a maximum fine of the greater of $250,000
22    or twice the gross gain or loss from the offense, a mandatory
23    $100 special assessment?  And my eyesight isn't as good as it
24    used to be.  I said commit wire fraud; it's commit visa fraud.
25              THE DEFENDANT:  OK, thank you.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

♀

C8rkrinp                    PLEA

```
 1              MR. TOMMASO:  That's right.
 2              THE COURT:  And you understand that charge, agreeing
 3    with others to commit visa fraud and the penalties I just
 4    informed you about, right?
 5              THE DEFENDANT:  Yes, your Honor.
 6              THE COURT:  Counsel, do you waive the public reading
 7    of the indictment?
 8              MR. TOMMASO:  Yes, I do, your Honor.
```
                              Page 4

c8rkrinp.txt

 9              THE COURT:  You are represented here by Mr. Tommaso,
10    correct?

11              THE DEFENDANT:  Yes.

12              THE COURT:  Have you talked with him, Mr. Rinchey,

13    about the charges you're facing and how you wish to plead?

14              THE DEFENDANT:  Yes, I have.

15              THE COURT:  And are you satisfied with the

16    representation that he has been giving and is giving to you?

17              THE DEFENDANT:  Yes.

18              THE COURT:  At this point, what is your plea to Count

19    Six of the S1 indictment?

20              THE DEFENDANT:  Guilty.

21              THE COURT:  I'm going to ask you some questions now,

22    Mr. Rinchey, to make sure you understand some of the rights

23    you're giving up by pleading guilty, some of the consequences

24    of pleading guilty.  And at the end of that discussion, I'll

25    ask you again if you still wish to plead guilty.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                              6
        C8rkrinp                    PLEA

 1              Do you understand that you have the right to plead not

 2    guilty and the right to a public jury trial on these charges?

 3              THE DEFENDANT:  Yes, your Honor.

 4              THE COURT:  And do you understand that if you were to

 5    plead not guilty and go to trial, the burden would be on the

 6    prosecutors to prove your guilt beyond a reasonable doubt?

 7              THE DEFENDANT:  Yes, your Honor.

 8              THE COURT:  And do you understand that you'd be

 9    presumed innocent unless the prosecutors and until the

10    prosecutors could do that?

c8rkrinp.txt
11              THE DEFENDANT:  Yes, your Honor.

12              THE COURT:  And do you understand that at a trial you

13    have the right to be represented by an attorney and at all

14    stages leading up to the trial, and, if necessary, Mr. Tommaso

15    or another attorney will be appointed for you by the Court free

16    of charge?

17              THE DEFENDANT:  Yes, your Honor.

18              THE COURT:  And do you understand that at a trial

19    you'd have the right, yourself or through your attorney, to

20    confront and question anyone who testifies against you but

21    you'd also have the right to call witnesses to testify for you,

22    and, if necessary, the Court would subpoena them to get them to

23    trial?

24              THE DEFENDANT:  Yes, your Honor.

25              THE COURT:  And do you understand that at trial you

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

♀

7

C8rkrinp                  PLEA

1     can't be forced to incriminate yourself, so nobody could force

2     you to take the witness stand if you thought that would hurt

3     your case but, on the other hand, after you got Mr. Tommaso's

4     legal advice, if you wanted to testify at trial, you'd have the

5     right to do so?

6               THE DEFENDANT:  Yes, your Honor.

7               THE COURT:  And do you understand that if you do

8     continue to plead guilty today, that means there will be no

9     trial of any kind, so you're giving up your right to a public

10    jury trial and waiving any possible defenses you may have to

11    these charges, including any possible claim that your

12    constitutional rights were violated?

13              THE DEFENDANT:  Yes, your Honor.
                                Page 6

c8rkrinp.txt

14          THE COURT:  Do you understand the charge you're facing

15     and the penalties you face?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Have you talked with Mr. Tommaso about how

18     the U.S. Sentencing Commission guidelines and the other

19     sentencing factors in Title 18, U.S. Code, Section 3553 may

20     apply to your case?

21          THE DEFENDANT:  Yes, I have, your Honor.

22          THE COURT:  Do you understand that Judge Marrero is

23     obligated to calculate the applicable sentencing guidelines, to

24     consider the guideline range, to consider departures under the

25     guidelines, and to consider the other sentencing factors in

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

♀

C8rkrinp               PLEA

8

1     Section 3553?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  And do you understand that under the

4     guidelines and Section 3553, among the other factors that Judge

5     Mr. Rinchey will consider, are the conduct you engaged in, the

6     victim of the offense, your role in the offense, whether you

7     have accepted responsibility for your acts, whether you have

8     any other criminal history and whether you have engaged in any

9     obstruction of justice?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Between now and the date of sentencing,

12     the probation staff will interview you, conduct an

13     investigation, and prepare a presentence report.  You and your

14     attorney will get copies of that report and so will the

15     prosecutor.  And if anything in the report is viewed by either

Page 7

c8rkrinp.txt
16    side as incorrect or inaccurate, each side or both sides can

17    file objections with Judge Marrero.  Do you understand that?

18              THE DEFENDANT:  Yes, your Honor.

19              THE COURT:  And do you understand that Judge Marrero

20    can't determine what sentencing guidelines or other Section

21    3553 sentencing factors apply to your case until after that

22    report is prepared and any objections filed and ruled upon?

23              THE DEFENDANT:  Yes, your Honor.

24              THE COURT:  And do you understand that as the term

25    "sentencing guidelines" implies, and as the Supreme Court has

                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                              9
          C8rkrinp                 PLEA

1     made clear, they're guidelines, they're not mandatory; so Judge

2     Marrero can give you a sentence within the guideline range,

3     less than the guidelines, greater than the guidelines but of

4     course not greater than the statutory maximum that I advised

5     you of before?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  And do you understand that under certain

8     circumstances, subject to the limitations imposed by your plea

9     agreement letter -- and we'll get to that letter in a few

10    minutes -- that you and/or the government may, under certain

11    circumstances, have the right to appeal from any sentence you

12    get?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  Now, I don't know what sentence you're

15    hoping for as you stand here today, but do you understand that

16    even if the sentence you get from Judge Marrero is stricter,

17    more severe, than that, you will still be bound by your guilty

18    plea and not allowed to withdraw it?
                            Page 8

c8rkrinp.txt

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  Mr. Rinchey, has anybody made any threats

21     or promises to you to convince or influence you to plead

22     guilty?

23          THE DEFENDANT:  No, your Honor.

24          THE COURT:  And do you also understand that in the

25     federal system, parole has been abolished, so if you're

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

c8rkrinp                    PLEA

1     sentenced to prison, you will not be released early on parole?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  And if you're sentenced to a term of

4     supervised release and you violate any of the conditions of

5     that release, you face additional punishment, including

6     additional imprisonment, up to the maximum allowed by law?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  And in addition to the criminal law

9     consequences we have been talking about, there are civil

10     consequences of a felony conviction, such as loss of the

11     ability to vote, loss of the ability to hold certain licenses

12     or jobs, et cetera.  Are you aware of that?

13          THE DEFENDANT:  Yes, I am, your Honor.

14          THE COURT:  I have been handed a copy of your plea

15     agreement letter dated July 26th on the first page, and it's

16     signed by you and Mr. Tommaso today, August 27th, on the sixth

17     and final page.

18          Other than what's contained in the plea agreement

19     letter, has anyone made any promises to you or anybody else to

20     convince or influence you to plead guilty?

c8rkrinp.txt
21          THE DEFENDANT:  No, your Honor.

22          THE COURT:  In particular -- and this may sound

23   redundant, it sort of is but I have to ask -- has anyone made

24   any promise to you or to anybody else as to the sentence that

25   you're going to get from Judge Marrero?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

C8rkrinp              PLEA

1           THE DEFENDANT:  No, your Honor.

2           THE COURT:  This is not an eye test.  If you can't see

3    it, let me know, but if you can, is this your signature on the

4    last page of the plea agreement letter?

5           THE DEFENDANT:  Yes, your Honor.

6           THE COURT:  And before you signed it, did you go

7    through it in detail with Mr. Tommaso and did he explain it all

8    to you?

9           THE DEFENDANT:  Yes, I did, your Honor.

10          THE COURT:  I'm going to ask you certain questions

11   about the plea agreement letter but you're still covered by

12   everything in the plea agreement letter.

13          Turning to page 3, do you understand that you have

14   agreed with the prosecutors, although it's not binding on Judge

15   Marrero, to a stipulated guideline range of 15 to 21 months'

16   imprisonment and a fine range of 3,000 to 30,000 dollars?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  And turning to page 4, do you understand

19   that you have agreed not to file a direct appeal or a

20   collateral challenge, including any challenge under 28, U.S.

21   Code, 2241 or 2255, from any sentence you get within or below

22   that stipulated range of 15 to 21 months' imprisonment?

23          THE DEFENDANT:  Yes, your Honor.
                         Page 10

c8rkrinp.txt

24          THE COURT:  And do you understand that you have agreed

25     not to -- you have agreed to waive any right to withdraw your

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

♀

C8rkrinp                    PLEA                              12

1     plea or attack your conviction -- directly on appeal,

2     collaterally or in any other way -- on the ground that the

3     government failed to produce discovery material, Jencks Act

4     material, exculpatory material, or impeachment material?

5               THE DEFENDANT:  Yes, your Honor.

6               THE COURT:  Any additional questions on the plea

7     agreement letter from the government, Mr. Cohen?

8               MR. COHEN:  Judge, this might have escaped my

9     attention, but if you haven't already allocuted the defendant

10    on whether any force or threats have been made in connection

11    with entry of the plea.

12              THE COURT:  I did ask that question but it can't hurt;

13    I'll ask it again.

14              MR. COHEN:  OK.

15              THE COURT:  Has anybody threatened you or forced you

16    in any way or made any threats to anybody else to convince or

17    influence you to plead guilty?

18              THE DEFENDANT:  No, your Honor.

19              THE COURT:  Having gone through some of the

20    consequences of pleading guilty and some of the rights you're

21    giving up, do you still wish to plead guilty?

22              THE DEFENDANT:  Yes, I do, your Honor.

23              THE COURT:  And are you doing so freely and

24    voluntarily because you in fact are guilty of the crime charged

25    in Count Six of the indictment?

Page 11

c8rkrinp.txt

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

C8rkrinp                    PLEA

1              THE DEFENDANT:  Yes, your Honor.
2              THE COURT:  Mr. Tommaso, have you talked with
3    Mr. Rinchey about the charges he's facing and the consequences
4    of pleading guilty?
5              MR. TOMMASO:  Yes, your Honor.
6              THE COURT:  And in your view, based on the information
7    you have from him, from your investigation, from discovery from
8    government, is he, in your opinion, pleading guilty because he
9    in fact is guilty?
10             MR. TOMMASO:  Yes, your Honor.
11             THE COURT:  Please tell me, Mr. Rinchey, in your own
12   words, what it is that you did to commit this crime.
13             THE DEFENDANT:  I was a manager of a night club and I
14   allowed girls to work with fraudulent visas.
15             THE COURT:  When did this occur?
16             MR. TOMMASO:  You want the exact date, Jon?
17             THE COURT:  Approximate times.
18             THE DEFENDANT:  From 2008.
19             THE COURT:  Till when?
20             THE DEFENDANT:  2011.
21             THE COURT:  And when you say fraudulent visas, what do
22   you mean by that?
23             THE DEFENDANT:  They weren't -- fraudulent?  They
24   weren't -- I don't know how to explain it.
25             The visa were obtained fraudulently.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

                        c8rkrinp.txt
        C8rkrinp          PLEA

 1              THE COURT:  And did you agree with others to engage in
 2    this visa fraud activity?
 3              THE DEFENDANT:  Yes, your Honor.
 4              THE COURT:  And where was this nightclub?
 5              THE DEFENDANT:  In Queens.
 6              THE COURT:  What is the basis for jurisdiction or
 7    venue here?
 8              MR. COHEN:  Judge, the government proffers that it
 9    would prove multiple acts in furtherance of the conspiracy
10    within the Southern District of New York, your Honor.
11              THE COURT:  I take it, Mr. Tommaso, that there is no
12    challenge to venue or jurisdiction here?
13              MR. TOMMASO:  No, your Honor.
14              THE COURT:  Any additional questions the government
15    would suggest, other than the knowing what he did was wrong,
16    which we'll get to?
17              MR. COHEN:  Other than that question, your Honor, the
18    government would proffer that coconspirators of the defendants
19    were not government agents or at least one was not a government
20    agent, as required.  Additionally, because this is a violation
21    of Title 18, United States Code, Section 371, one of the
22    elements is related to -- one of the elements involves an overt
23    act, so the government would ask your Honor to allocute the
24    defendant on the overt act that is contained on paragraph 28 of
25    the S1 superseder, page 28 --

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

 ℉

                                                              15
        C8rkrinp            PLEA

 1              THE COURT:  Paragraph (g)?
                        Page 13

c8rkrinp.txt

2          MR. COHEN:  That's right, your Honor.

3          THE COURT:  Did you, on or about January 26, 2011,

4    discuss with others the employment of aliens as strippers, in

5    violation of their visas?

6          THE DEFENDANT:  Yes, I did, your Honor.

7          THE COURT:  And do you know, in connection with all of

8    this, that what you did was wrong?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  Any additional questions from the

11   government?

12         MR. COHEN:  Not from the government, your Honor.

13         THE COURT:  Mr. Tommaso, any additional questions you

14   would suggest?

15         MR. TOMMASO:  No, your Honor.

16         THE COURT:  Mr. Tommaso, any reason, in your view, why

17   I should not recommend to Judge Marrero acceptance of the plea?

18         MR. TOMMASO:  No, your Honor.

19         THE COURT:  All right.

20         Mr. Rinchey, I'm satisfied that you understand the

21   nature of the charges against you and the consequences of

22   pleading guilty.  I'm also satisfied your plea is being made

23   freely, voluntarily, and knowingly, and that there is a factual

24   basis for the plea; and I therefore recommend to Judge Marrero

25   that he accept your plea of guilty.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

♀

                                                              16
     C8rkrinp                    PLEA

1          Has a date for sentencing been set?

2          MR. COHEN:  No, yet, your Honor.

3          THE COURT:  Mr. Rinchey is not in custody, I take it,

4    correct?

                           Page 14

c8rkrinp.txt

5                  MR. TOMMASO:  No, he's in home confinement, your
6       Honor.
7                  THE COURT:  All right.  So let's go out four months.
8                  MR. TOMMASO:  Fine.
9                  THE COURT:  Which gets us right around Christmastime.
10      So let's set it for December 20 at 4:00 o'clock.
11                 MR. TOMMASO:  Your Honor, could we have before that?
12      Because I'm going to be away.
13                 THE COURT:  When?
14                 MR. TOMMASO:  The 13th.
15                 THE COURT:  That doesn't quite give probation four
16      months for the report.
17                 MR. TOMMASO:  Can we have it in the beginning -- can
18      we have it 27th, 28th of December, 31st?
19                 MR. COHEN:  Your Honor, the government wouldn't have a
20      problem with the first week of January.
21                 MR. TOMMASO:  That's fine.
22                 MR. COHEN:  If your Honor and if defense counsel --
23                 THE COURT:  So January 3 at 4:00 p.m., and that date
24      obviously is a control date.  Exactly what Judge Marrero's
25      calendar is, I don't know, and if there is a change in the

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                              17
        c8rkrinp                  PLEA

1       date, Mr. Rinchey, Mr. Tommaso will be informed and they will
2       inform you.
3                  In the meantime, I direct that a presentence report be
4       prepared.  And, as we have talked about before, Mr. Rinchey,
5       it's important you cooperate with them because that's a
6       critical part of the sentencing phase of your case.  You

                                Page 15

c8rkrinp.txt

7   understand that, right?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  If you or Mr. Tommaso wish, I'll direct

10  the clerk to indicate that any such interview take place only

11  in the presence of Mr. Tommaso or some lawyer standing in for

12  you.

13         MR. TOMMASO:  That's correct, your Honor.

14         THE COURT:  All right, the clerk will so mark the

15  file.

16         Bail continued as previously set.  Any applications

17  can be taken up with Judge Marrero.

18         And I direct the U.S. Attorney's Office to obtain the

19  transcript from this colloquy and to present it promptly to

20  Judge Marrero along with any other paperwork that he may

21  require.

22         Any else from either side?

23         MR. COHEN:  Not from the government, your Honor.

24         MR. TOMMASO:  Not from the defense, your Honor.

25         THE COURT:  All right, we are adjourned on this case.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

18

C8rkrinp                    PLEA

1          MR. TOMMASO:  Thank you very much, your Honor.

2          MR. COHEN:  Thank you, Judge.

3                           * * *

4

5

6

7

8

9

Page 16

c8rkrinp.txt

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

♀



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*United States Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

July 26, 2012

<u>By E-mail</u>
Peter Tommaso, Esq.
123-60 83 Ave
Kew Gardens, NY 11415
(718) 261-1200
Fax: (718)-261-2376
Email: petlaw11@aol.com

> Re:   <u>United States v. Jeffrey Rinchey</u>
>        S1 11 Cr. 614 (VM)

Dear Mr. Tommaso:

On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Jeffrey Rinchey (the "defendant") to Count Six of the above-referenced Indictment (the "Indictment").

Count Six charges the defendant with conspiring to commit visa fraud from at least in or about 2008 through in or about 2011, in violation of Title 18, United States Code, Section 371. This charge carries a maximum sentence of 5 years' imprisonment; a maximum term of 3 years' supervised release; a maximum fine, pursuant to Title 18, United States Code, Section 3571, of the greatest of $250,000 or twice the gross profits or other proceeds derived from the defendant's participation in the enterprise; and a mandatory $100 special assessment.

In consideration of the defendant's plea to the above offense, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations as to which this Office cannot, and does not, make any agreement) for the conduct charged and described in the Indictment. In addition, at the time of sentencing, the Government will move to dismiss any open Count(s) against the defendant. The defendant agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

03.30.2012

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

A.    Offense Level

1.    The Guidelines provisions in effect as of November 1, 2011, apply in this case.

2.    Pursuant to U.S.S.G. § 2L2.1(a), the base offense level is 11.

3.    Pursuant to U.S.S.G. § 2L2.1(b)(2), because the offense involve between 6 and 24 documents/passports, the offense level is increased by 3 levels.

4.    Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a).

In accordance with the above, the applicable Guidelines offense level is 12.

B.    Criminal History Category

Based upon the information now available to this Office (including representations by the defense), the defendant has six criminal history points, calculated as follows:

1.    On or about May 13, 2002, the defendant was convicted, in Kings County Criminal Court, New York, of criminal sale of a controlled substance in the third degree, in violation of New York Penal Law Section 220.39(1), a Class B felony, which resulted in a sentence of four to eight years' incarceration. Pursuant to U.S.S.G. § 4A1.1(a), this sentence results in three criminal history points.

2.    On or about Feburary 4, 2002, the defendant was convicted, in Queens County Supreme Court, New York, of attempted criminal possession of marijuana in the second degree, with aggregate weight of more than 16 ounces, in violation of New York Penal Law Section 221.25, a Class E felony, which resulted in a sentence of two to four years' incarceration. Pursuant to U.S.S.G. § 4A1.1(a), this sentence results in three criminal history points.

3.    On or about July 21, 1992, the defendant was convicted, in Queens County Supreme Court, New York, of (i) two counts of reckless endangerment in the first degree, in violation of New York Penal Law Section 120.25, Class D felonies, which resulted in a sentence of six months' incarceration; (ii) one count of criminal mischief in the third degree, in violation of New York Penal Law Section 145.05, a Class E felony, which resulted in a sentence of three months' incarceration; and (iii) one count of

criminal possession of a weapon in the fourth degree, with intent to use, in violation of New York Penal Law Section 265.01(2), a Class A misdemeanor, which resulted in a sentence of six months' incarceration. Pursuant to U.S.S.G. § 4A1.2(e), this sentence results in zero criminal history points.

In accordance with the above, the defendant's Criminal History Category is III.

C.    Sentencing Range

Based upon the calculations set forth above, the defendant's Sentencing Guidelines range is 15 to 21 months' imprisonment (the "Stipulated Guidelines Range"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 12, the applicable fine range is $3,000 to $30,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party suggest that the Probation Office consider such a departure or adjustment under the Guidelines, or suggest that the Court *sua sponte* consider any such departure or adjustment.

The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range, suggest that the Probation Office consider a sentence outside of the Stipulated Guidelines Range, and suggest that the Court *sua sponte* consider a sentence outside of the Stipulated Guidelines Range, based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

Except as provided in any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at

03.30.2012                                    3

the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence within or below the Stipulated Guidelines Range of 15 to 21 months' imprisonment, and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation.  The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal any term of supervised release that is less than or equal to the statutory maximum. The defendant also agrees not to appeal any fine that is less than or equal to $3,000, and the Government agrees not to appeal any fine that is greater than or equal to $30,000.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady* v. *Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, and impeachment material pursuant to *Giglio*

03.30.2012                                    4

v. *United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

It is further agreed that should the conviction(s) following the defendant's plea(s) of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

Apart from any written Proffer Agreement(s) that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

PREET BHARARA
United States Attorney

By: _____
Daniel Chung/Jonathan Cohen/Michael Ferrara
Assistant U.S. Attorneys
(212) 637-2417/2408/2526

APPROVED:

_____
Elie Honig
Chief, Organized Crime Unit

AGREED AND CONSENTED TO:

_____
Jeffrey Rinchey

8-27-12
_____
DATE

APPROVED:

_____
Peter Tommaso, Esq.
Attorney for Jeffrey Rinchey

9-27-12
_____
DATE

03.30.2012                                  6